## SMALL v. OLDER.

1. **Principal and Surety:** JOINT NOTE: VERBAL RELEASE OF ONE MAKER. Where two persons gave their joint note for borrowed money, of which, by an agreement known to the lender, each was to have one-half, it was not a case of suretyship, but each was a principal for the whole amount; and a verbal agreement of the lender upon payment of one-half by one maker to look to the other for the balance due on the note, not shown to have been based upon a consideration, was not binding.

2. ———: MORTGAGES: APPLICATION OF PROCEEDS. Where the proceeds of mortgages executed to secure an individual note and a joint note were not sufficient to pay both, the holder of the notes was under no obligation to apply the sum realized upon both notes, *pro rata*, but might apply the entire sum upon the individual note.

*Appeal from Buchanan Circuit Court.*

MONDAY, DECEMBER 12.

ACTION upon a promissory note. A judgment was rendered for plaintiff from which defendant appeals. The facts of the case fully appear in the opinion.

*Charles Rausier* and *Boies & Couch*, for appellant.

*Sake & Harman* and *J. B. Powers*, for appellee.

BECK, J.—The action is based upon a promissory note executed by defendant and James Jamison. As the questions in the case arise upon the rulings of the Circuit Court upon a demurrer to the answer and upon a motion to strike out certain parts thereof, it becomes necessary to fully present that pleading. It is in the following words:

"1. That on or about the 22d day of May, 1876, one James Jamison, and this defendant, borrowed of plaintiff the sum of six hundred and twenty-two and 50-100 dollars, each.

"2. That the whole sum borrowed was twelve hundred and forty-five dollars, but plaintiff, as well as this defendant and said Jamison, well knew that this defendant was to have and use for his individual benefit one-half of said sum, and said Jamison was to have and use as his own the other one-half of such loan, and that said defendant and Jamison should each be liable on the note given therefor as principal for the sum to be used by him, and as surety for the other one-half."

"3. That in pursuance of such agreement said plaintiff advanced to defendant and said Jamison the money so loaned, which was by them received and used as agreed, and they delivered to plaintiff the note in suit.

"4. That on the 27th day of January, 1867, defendant paid to plaintiff, to apply on said note, the sum of six hundred and sixty-four dollars and eighty-four cents, that being the sum then due and unpaid upon said note, for which defendant was liable as principal, and then agreed upon by plaintiff and this defendant.

And as a further defense said defendant answers:

"5. That about January 27th, 1877, this defendant paid to plaintiff to apply on said note the sum of six hundred and sixty-four and 8.-100 dollars, being the full sum received by

him on the loan aforesaid, and for which he was liable as principal at that date, of which fact plaintiff had knowledge; and thereupon defendant verbally notified and requested plaintiff to require of said James Jamison payment of his share of said note in suit, or such security therefor as plaintiff was willing to accept, without the personal obligation of this defendant.

"9. That afterwards, and on or about the month of April, 1877, this defendant, having concluded to go from the State of Iowa to the Pacific coast, again applied to plaintiff and notified him of his said intention, and again requested said plaintiff to either exact immediate payment from said Jamison of that part of the sum secured by said note for which he was liable as principal, or such security therefor as he was willing to rely upon, without the personal obligation of defendant, and gave as a reason for such request, that he (the said defendant) was about to remove from said State of Iowa, and would be unable to give the matter any further attention; and thereupon said plaintiff verbally agreed with this defendant that he would exact either immediate payment by said Jamison or ample and sufficient security therefor.

"10. That relying on said promise and agreement, this defendant in April, 1877, removed from said State of Iowa to the State of California, of which fact plaintiff had notice, and did not return to the State of Iowa until after the death of said Jamison, as hereinafter set forth.

"11. That at the time of the request and agreement, as hereinbefore stated, and of the removal of this defendant, as above stated, said Jamison was solvent and had in his possession, at and near his residence in Buchanan county, Iowa, a large amount of property, both real and personal, liable to be taken on execution against him, and plaintiff's claim could have been readily collected by action at law.

"12. That in pursuance of said agreement with defendant, plaintiff did apply to said James Jamison for payment or

security of his share of the sum secured by the note in suit for which said Jamison was liable as principal, and thereupon it was agreed by and between said plaintiff and said Jamison that said Jamison should execute and deliver to plaintiff a mortgage upon certain real estate to secure the same, in pursuance of which said Jamison did on the 10th day of May, 1877, make and deliver to said plaintiff a mortgage upon certain real estate owned by him; and subsequently, and on the 2d day of January, 1878, said Jamison to further secure said note made and delivered to plaintiff another mortgage upon certain other real estate then owned by him, both of which mortgages were duly acknowledged, and soon after their execution were recorded in the recorder's office of said county of Buchanan, where said premises are situated.

"13. And defendant says that at the time of the execution of each of the aforesaid mortgages, and of the making of said agreement by plaintiff with this defendant to obtain payment or security for the sum then due on the note in suit, the said Jamison was indebted to plaintiff in the sum of about sixteen hundred and sixty-five dollars upon his individual note, of which fact this defendant was wholly ignorant, and which fact said plaintiff concealed from this defendant, and said plaintiff caused and procured said mortgage so made by said Jamison to him to be so made and executed as to secure such individual note of said Jamison, as well as the joint note of himself and this defendant; but before the execution and delivery of either of said mortgages this defendant had removed from this State, as above set forth, and he was wholly ignorant of the fact that the securities so agreed to be procured by plaintiff, and which were in fact procured, were to, or did, secure other indebtedness than that represented by the note in suit in this action, and said defendant was not informed that any other indebtedness was secured thereby until after the death of said Jamison.

"14. That about the 2d of August, 1878, the said James

Jamison died at his residence in Buchanan county, Iowa, insolvent, his estate being then insufficient to pay his debts.

"15. That defendant relied upon the promise of plaintiff to exact payment of said Jamison of the sum due on said note in suit which he as principal was liable to pay, or ample security therefor, and solely by reason of such agreement neglected to take any steps to compel proceedings for collection thereof.

"16. That after the death of said James Jamison, plaintiff wholly failed to file any claim against his estate on the note in question, but thereafter did institute proceedings in the Circuit Court of Iowa for Buchanan county for the foreclosure of the mortgages aforesaid, and such proceedings were had therein that judgment of foreclosure was entered therein, and the mortgaged premises decreed to be sold to satisfy the sum secured without any judgment or order directing to what part of the indebtedness secured the sum realized from such sale should be applied.

"17. That in pursuance of such judgment said mortgaged premises were sold, and plaintiff bid the same in for the sum of twenty-two hundred and fifty dollars, a sum in excess of that due on the individual indebtedness of said Jamison to plaintiff, but insufficient to pay such indebtedness and the note in suit.

"18. That the claims filed against the estate of said James Jamison within the first six months after the appointment of an administrator of his estate and publication of notice by said administrator as required by law are sufficient to fully exhaust his said estate, and nothing whatsoever can be collected from said estate by defendant if compelled to pay the claim in suit.

"19. That no notice that plaintiff considered his security so taken from said Jamison insufficient to pay in full the claim in question was given defendant until after the expiration of six months from publication of notice to present claims by

the administrator of the estate of said Jamison, and until after that time defendant believed, and acted upon such belief, that said indebtedness had been paid or fully secured by said Jamison.

"Wherefore defendant prays judgment for his costs herein expended. That the allegations in his answer herein be taken and deemed a cross-bill; that this action be transferred to the equity docket; that the court ascertain and determine the nature of defendant's liability upon the note in suit, whether it be as principal or surety, and whether plaintiff agreed with defendant to exact payment from the principal debtor, or security as set forth herein, and whether defendant acted on such agreement, and whether by reason thereof defendant as surety has been prejudiced by plaintiff's failure to perform his said agreement to exact payment or security for the debt in question, and whether plaintiff did obtain from said Jamison security for the debt in question, and if so, what sum has been realized therefrom, and what portion of the sum so realized ought in equity to be applied to the payment of the claim in suit, and for general relief."

A motion to strike paragraphs 2, 5, 9, 13, 15 and 16, and a demurrer to the whole answer were sustained. These rulings are complained of in the assignment of error and argument of defendant's counsel.

II. It is first insisted that the answer shows defendant is surety for the other maker of the note and, therefore, upon the

1. PRINCIPAL and surety: joint note: verbal releases. facts alleged in the answer he is discharged from liability. But we think the facts alleged fail to show that defendant was the surety of Jamison. It is alleged that they jointly borrowed the money for which the note was given under an arrangement known to plaintiff that each was to take half of the sum. This does not present a case of suretyship for each received a part of the consideration of the note and became jointly bound with the other for the whole. Each is a principal. The disposition of the money

for which the note was given did not change or affect the contract expressed in the note. It will be observed it is not alleged that the plaintiff agreed to hold the respective parties bound as principals for the sum received by each, and as sureties for the balance of the note. It is alleged that such an arrangement was made by the makers of the note which was known to plaintiff, but it is not averred that he became a party to the agreement.

III. The verbal agree ment of plaintiff alleged in the 9th paragraph of the answer, to the effect that he would exact payment or security from Jamison, is not shown to be based upon a consideration. Defendant being, as we have seen, bound as a principal, would not be discharged by an agreement of plaintiff, without consideration, to collect the note from the other maker. If the defendant had been a surety as he claims, it is doubtful whether the agreement and notice pleaded would have been sufficient to relieve him from liability. It surely cannot, regarding him as a principal debtor.

IV. It is urged that upon the facts alleged in the answer plaintiff was under obligation to apply the sum realized upon the foreclosure of the mortgages *pro rata* upon the notes secured. The facts are these: plaintiff held a note signed by Jamison alone, and another, the note in suit, signed by Jamison and defendant. Jamison executed mortgages to secure both notes. There was not sufficient realized upon the foreclosure to discharge both notes, and plaintiff applied the proceeds from the foreclosure upon the note signed by Jamison alone. The law secures to plaintiff the benefit of all the securities he held, and will so appropriate the sums realized as to secure the payment of both debts. The plaintiff held but one security upon the debt secured by Jamison's note, namely, the mortgages. He held two securities for the debt owed by Jamison and defendant, the mortgages and defendant's name upon the note. Now, as against the debtors, he is entitled to payment in full of his claims upon them. His

2. ———: mortgages: application of proceeds.

securities will be so enforced that this right will be preserved. If the proceeds of the mortgaged property are applied *pro rata* on both notes, this right will be defeated; if it be applied upon the note signed by Jamison alone, it will be preserved. It will be remembered that the debtors, Jamison and defendant, can base no equity upon any ground which would require proceedings resulting in the defeat of plaintiff, their creditor, as to any part of his claims. These views are correct whether defendant is to be regarded as a surety or principal in the note in suit.

It will be observed, too, upon reading defendant's answer, that it is not shown therein that the mortgages provided for the appropriation of the money realized thereon in the manner insisted upon by defendant. Nor is it shown that the appropriation made was not authorized by the conditions of the mortgages. In the absence of such averments in the petition, it will be presumed that the money was rightly appropriated; *omnia rite esse acta.*

No other points in the case are discussed by counsel. The judgment of the Circuit Court must be

AFFIRMED.